HALLIGAN AND McLELLAN, INC., A BODY CORPORATE, PROSECUTOR, v. NEW JERSEY STATE BOARD OF TAX APPEALS AND CITY OF NEWARK, A MUNICIPAL CORPORATION, DEFENDANTS.

Argued January 19, 1939—Decided June 12, 1939.

552

Before Brogan, Chief Justice, and Justices Bodine and Heher.

For the prosecutor, *Samuel S. Ferster* and *Conover English*.

For the defendants, *James F. X. O'Brien* (*Vincent J. Casale,* of counsel).

Per Curiam.

While stored on the premises of the Seaboard Terminal Warehouse, a body corporate, situate in the taxing district of the City of Newark, a quantity of lumber of prosecutor, a New York corporation dealing in that commodity, was assessed for the purposes of taxation for the year 1935 in the sum of $35,000; and the single question at issue is whether the subject-matter of the assessment was exempt from such taxation under section 203 of the General Tax act of 1918 (*Pamph. L., p.* 847), as finally amended by chapter 372 of the laws of 1931 (*Pamph. L., p.* 904; *R. S.* 1937, 54:4-3.20), placing in that category "all personal property stored in a warehouse of any person, co-partnership or corporation, engaged in the business of storing goods for hire."

The Essex County Board of Taxation canceled the assessment. The State Board of Tax Appeals reversed that judgment, and "restored" the assessment. That tribunal found that "The more expensive grades of lumber, such as mahogany are stored within the building, and the cheaper grades in open sheds of the company, consisting of a covering or roof built upon posts, the sides being open;" that "An employe of the Company is constantly on duty at the place where the

lumber is stored, and supervises its receipt, delivery and storage;" that "When sales are made orders are issued to the employe at the warehouse premises to release the lumber and load it upon the Company's trucks for delivery;" that "no warehouse receipts are issued when the lumber is stored and that it remains under the control and supervision of the company;" that "The Warehouse Company does not have supervision or control over the lumber while it is stored on its premises;" and that "The record is barren of any evidence that the warehouse company accepts for storage, lumber or goods of other persons or corporations." And it ruled that the legislature, by this enactment, "intended to exempt from taxation goods stored in a public warehouse, such storage creating a bailment for which warehouse receipts are issued;" and that "the exemption provided by the statute was not intended to include sheds, but to extend only to buildings which are completely enclosed and are commonly known as warehouses,' — — — that a business of leasing space for storage of goods in charge of a representative of the lessee, and over which goods or space the lessor has no supervision or control, and for which it gives no warehouse receipt, is not within the purview of the exempting statute."

The property owner thereupon sued out this writ of *certiorari*. Additional testimony was taken under the authority of section 2:81-8 of the Revised Statutes of 1937. It was stipulated that "the lumber of the Prosecutor was stored on the premises of the Seaboard Terminal Warehouse, a corporation engaged in the business of storing goods for hire;" and it was proved that the Warehouse Company was engaged in the business "of public warehousing; warehousing in all its phases, trans-shipping, transferring;" that it did not ordinarily issue warehouse receipts for lumber, but did so as the occasion warranted, where, for instance, such receipts were needed "for the purpose of depositing them with a bank as security for loans or collateral for loans, and so on;" that the company's operations were divided into three classes: "lumber, sugar and general cargo;" and that, as regards the issuance of warehouse receipts, the same practice obtained as to all stored merchandise.

We are of the view that the evidence, as thus supplemented in this court, establishes that the goods in question were "stored in a warehouse," within the intendment of the exemption statute adverted to. Section 58 of the Uniform Warehouse Receipts Act defines a "warehouseman" as "a person lawfully engaged in the business of storing goods for profit." *Comp. Stat.* 1910, *pp.* 5776, 5787. The warehouseman here answers that description. There was clearly a bailment of the goods; the supervision exercised by the owner, through its servant, of the "receipt, delivery and storage" and the "release" of the lumber "when sales are made," did not create a different relationship. Nor was the issuance of a warehouse receipt essential to bring the transaction within the statute. If the goods are stored in "a warehouse" of one "engaged in the business of storing goods for hire," they are within the statutory class. And it is to be observed that the practice was to issue warehouse receipts whenever there was need therefor. We are also of the opinion that the lumber stored in the sheds maintained as an incident of the warehouse falls within the exempt class.

This disposition is not to be considered as an implied holding that the exemption statute does not transcend constitutional limitations. The municipality has not raised, either here or in the tribunals below, the question of the constitutional validity of the exemption statute, and there is therefore no occasion to pass upon that point.

The judgment of the State Board of Tax Appeals is accordingly reversed, and the judgment of the Essex County Board of Taxation is affirmed, with costs.